**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------X

FAITH SANDERS,

Plaintiff,

-against-

METROPOLITAN TRANSPORTATION AUTHORITY, and LLOYD SENIOR,

Defendants.

-----------------------------------------------------------------X

Civil Case No:

**COMPLAINT**

Plaintiff Demands a Jury Trial

Plaintiff FAITH SANDERS ("SANDERS" or "PLAINTIFF"), by her attorneys, DEREK SMITH LAW GROUP, PLLC, hereby complains of Defendants METROPOLITAN TRANSPORTATION AUTHORITY, and LLOYD SENIOR, upon information and belief as follows:

## PRELIMINARY STATEMENT

1. Plaintiff FAITH SANDERS complains pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"), New York State law, New York City law, and New York common law and seeks damages to redress the injuries Plaintiff suffered as a result of being discriminated against by her employer on the basis of sex, together with hostile work environment.

## PARTIES

2. At all times material, Plaintiff FAITH SANDERS (hereinafter referred to as "PLAINTIFF" or "SANDERS") is a female citizen that resides in the State of New York, Kings County.
3. At all times material, Defendant METROPOLITAN TRANSPORTATION AUTHORITY (hereinafter referred to as "MTA") was and is a domestic government entity, duly existing by the virtue and laws of the State of New York, doing business in the State of New York.
4. At all times material, Defendant LLOYD SENIOR (hereinafter referred to as "SENIOR") was and is a Supervisor and agent for the MTA.
5. At all times material, Defendants' Supervisor SENIOR was Plaintiff's immediate Supervisor.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 in that the action involves a federal question.
7. This Court has supplemental jurisdiction over the related New York State law, New York City law, and New York common law causes of action asserted in this complaint pursuant to 28 U.S.C. § 1367.
8. Venue properly lies in this District pursuant to 28 U.S.C. §1391 (b)(1) and (b)(2) and 28 U.S.C. §1931 (c).
9. On or about December 7, 2016, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Thereafter, the EEOC transferred Plaintiff's charge to the Department of Justice ("DOJ").

10. On or about July 25, 2017, in response to Plaintiff's request, the DOJ issued a Notice of Right to Sue.
11. Plaintiff has satisfied all administrative prerequisites and is filing this case within ninety (90) days of receiving the issued Right to Sue

## STATEMENT OF FACTS

12. In or around August of 2016, Defendants hired Plaintiff SANDERS as a Conductor.
13. At all times material, Defendants' Supervisors, known as "Train Service Supervisors" ("TSS"), were and are designated Supervisors of all Conductors.
14. At all times material, Defendants' Supervisor SENIOR was and is a TSS.
15. In or around September of 2016, Plaintiff learned she was pregnant. Plaintiff continued to proudly work for Defendants.
16. On or about November 6, 2016, upon arriving at work, Defendants' Supervisor SENIOR demanded Plaintiff speak to him. Defendants' Supervisor SENIOR began berating Plaintiff over her pants: "Those pants are not regulation," "Those pants are inappropriate," "Those pants are not in the Code for the uniform."
17. Plaintiff was unsure how to respond. None other of Defendants' Supervisors had ever berated Plaintiff for her attire. Plaintiff promised to purchase new pants and continued to work.
18. On or about November 6, 2016, Defendants assigned Plaintiff to operate their "Q" Train, departing from Defendants' Coney Island-Stillwell Avenue Station, heading North bound.

19. On or about November 6, 2016, moments before the "Q" Train left the Station, Defendants' Supervisor SENIOR jumped aboard and entered the operating center that Plaintiff was working in.

20. At all times material, the operating center is a small cabin at the front of the train that Conductors operate the train from.

21. During the train ride, Defendants' Supervisor SENIOR again berated Plaintiff for wearing her pants. SENIOR told Plaintiff, among other things, "those pants are just way too tight on your body."

22. Defendants' Supervisor SENIOR then walked behind Plaintiff and attempted to "show her" what buttons to press on a control panel. SENIOR came close to Plaintiff's shoulder and hovered over her body.

23. Defendants' Supervisor SENIOR then took out a notepad and pen and began to ask Plaintiff about her body size. Defendants' Supervisor SENIOR asked Plaintiff what her shoe size, waist size, and shirt size was. Defendants' Supervisor SENIOR wrote all this information down on his notepad. Plaintiff thought Defendants' Supervisor SENIOR was going to order her a new outfit for work, but was otherwise confused by the inappropriate probing.

24. Defendants' Supervisor SENIOR then pointed to Plaintiff's breast and asked "what about those?" SENIOR asked Plaintiff "is your bra padded? Are you a B cup or a C cup?"

25. Plaintiff responded "are your really asking me that at work?" Defendants' Supervisor SENIOR was momentarily silent.

26. Defendants' Q Train left the DeKalb Avenue/ Flatbush Avenue Station and headed towards Defendants' Canal Street Station in Manhattan. When the train left the Station, Defendants' Supervisor SENIOR attacked Plaintiff.

27. Defendants' Supervisor SENIOR lunged forward and using his forearm, pushed Plaintiff up against the wall of the operating center. Defendants' Supervisor SENIOR then unbuttoned a button on Plaintiff's shirt. Plaintiff was frozen in fear and shocked.

28. As Defendants' Supervisor SENIOR unbuttoned Plaintiff's shirt, Plaintiff was unable to move. Defendants' Supervisor SENIOR placed his forearm below Plaintiff's collar bone pinning her back against the wall.

29. Defendants' Supervisor SENIOR then reached into Plaintiff's shirt and squeezed her breast.

30. Plaintiff attempted to maneuver away from Defendants' Supervisor SENIOR. Every time Plaintiff fidgeted away, Defendants' Supervisor SENIOR would press harder, pinning her against the wall.

31. Plaintiff -- who was pregnant and concerned for the life of her unborn baby -- was petrified.

32. Defendants' Supervisor SENIOR began moving his hand around to get under Plaintiff's bra. Defendants' Supervisor SENIOR successfully penetrated Plaintiff's bra and touched and squeezed Plaintiff's nipple. In the process, Defendants' Supervisor SENIOR unbuttoned a second and third button.

33. Defendants' Supervisor SENIOR momentarily released his forearm off of Plaintiff's chest in order to open up Plaintiff's shirt. Defendants' Supervisor SENIOR exposed Plaintiff's breasts and nipples through the opening of her shirt.

34. Defendants' Supervisor SENIOR then placed his forearm back directly below Plaintiff's collarbone, pinning Plaintiff up against the wall.

35. Defendants' Supervisor SENIOR then, with his mouth, latched on to Plaintiff's right nipple. Defendants' Supervisor SENIOR began biting and sucking Plaintiff's nipple. Plaintiff was in

great physical pain and discomfort from Defendants' Supervisor SENIOR's teeth and forearm.

36. As Plaintiff attempted to pull away, Defendants' Supervisor SENIOR grabbed Plaintiff's breast harder and pulled harder towards his mouth.

37. As Defendants' Q Train approached the Canal Street Station, Defendants' Supervisor lifted his head, smiled at Plaintiff, and walked out of the operating room.

38. Defendants' Q Train then arrived at Canal Street Station.

39. As Plaintiff stood in shock, buttoning her shirt and tucking her breast back into her bra, Defendants' Supervisor SENIOR lurked outside of the train car. Plaintiff was horrified at the prospect of Defendants' Supervisor SENIOR getting back into the operating center to sexually assault her again.

40. As Defendants' Q Train pulled away from Canal Street Station, Plaintiff could see through a train window that Defendants' Supervisor SENIOR did not get back on the train.

41. Plaintiff operated Defendants' Q Train until it reached Defendants' 57/7th Avenue Station. Upon arriving at Defendants' 57/7th Avenue Station, Plaintiff exited the Q Train, went into an administrative office therein, and asked how to report a sexual assault. Defendants provided the name of an individual to report to: Defendants' Superintendent [First name unknown] CLEMENT.

42. Upon arriving back at Defendants' Coney Island - Stillwell Avenue Station, Plaintiff reported Defendants' Supervisor SENIOR's sexual assault to Defendants' Superintendent CLEMENT.

43. On or about November 7, 2016, a day after the attack, Defendants demanded Plaintiff meet with Defendants' EEO Officers ALEXANDER T. LINZER, MARISSA J. KANG, and

LINDSEY M. GOSIN. Defendants' EEO Officers took Plaintiff's information and told Plaintiff to get back to work. Defendants' EEO Officers gave Plaintiff no indication as to whether Defendants' SENIOR would be terminated or whether Plaintiff would have to continue to work with Defendants' Supervisor SENIOR.

44. On or about November 8, 2016, Plaintiff met with the New York City Police Department's Special Victim's Squad to report the sexual assault that had occurred.

45. Despite the sexual assault, Plaintiff continued to proudly work for Defendants as best as she could.

46. On or around November 10, 2016, Plaintiff asked Defendants' Supervisor ALSTON BURSSAUD ("BRUSSAUD") where Defendants' Supervisor SENIOR was and if Plaintiff would have to work with him or see him during work. Defendants' Supervisor BURSSAUD provided no reassurance and refused to tell Plaintiff anything. Plaintiff became increasingly terrified that another attack would occur.

47. On or around November 11, 2016, Plaintiff once again asked Defendants' Supervisor BURSSAUD where Defendants' Supervisor SENIOR was and if the Plaintiff could be assured that Defendants' Supervisor SENIOR was not employed and/or at work. Defendants' Supervisor BURSSAUD provided no reassurance and refused to tell Plaintiff anything.

48. Plaintiff feared she would run into Defendants' Supervisor SENIOR and be brutally attacked again. Defendants continued to refused to inform Plaintiff whether Plaintiff's attacker would be working with Plaintiff. Plaintiff became increasingly anxious and scared at work.

49. On or about November 14, 2016, the mental anguish and emotional distress became too much for Plaintiff. While at work for Defendants, Plaintiff broke down into tears, started

shaking, breathing erratically, and was unable to control her emotions. The stress caused from Defendants' Supervisor SENIOR's attack coupled with the anxiety caused by the Defendant's secretive investigation caused Plaintiff to have a nervous break down.

50. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against Defendants.

51. As a result of Defendants' discriminatory and intolerable treatment, Plaintiff suffered and continues to suffer severe emotional distress and physical ailments.

52. At a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

53. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

54. The above are just some of the examples of unlawful, discriminatory, and retaliatory conduct to which Defendants subjected Plaintiff.

**AS A FIRST CAUSE OF ACTION**
**DISCRIMINATION UNDER TITLE VII**
**(Not Against Individual Defendants)**

55. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

56. Title VII states in relevant part as follows:

"(a) Employer practices:

It shall be an unlawful employment practice for an employer:

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

57. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the unlawful employment practices of the above named Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's sex.

58. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e et seq., by discriminating against Plaintiff as set forth herein because of Plaintiff's sex, together with creating and maintaining a hostile work environment.

**AS A SECOND CAUSE OF ACTION FOR DISCRIMINATION UNDER TITLE VII**
**(Not Against Individual Defendants)**

59. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

60. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because she has opposed any practice made an unlawful employment practice by this subchapter, or because she has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

61. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e seq. by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of Defendants.

**AS A THIRD CAUSE OF ACTION UNDER STATE LAW**
**DISCRIMINATION**

62. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

63. New York State Executive Law § 296 provides that: "1. It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sex, or disability, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

64. Defendants violated the section cited herein by creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff because of Plaintiff's sex.

**AS A FOURTH CAUSE OF ACTION UNDER STATE LAW**
**AIDING & ABETTING**

65. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

66. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

67. Defendants violated the section cited herein as set forth.

**AS A FIFTH CAUSE OF ACTION UNDER STATE LAW RETALIATION**

68. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

69. New York State Executive Law § 296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

70. Defendants engaged in unlawful employment practices prohibited by § 296(7) by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of Defendants.

**AS A SIXTH CAUSE OF ACTION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE DISCRIMINATION**

71. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

72. The Administrative Code of City of NY § 8-107 [1] provides that it shall be an unlawful discriminatory practice: "For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

73. Defendants violated the section cited herein by creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff because of her gender.

**AS A SEVENTH CAUSE OF ACTION**
**UNDER THE NEW YORK CITY**
**ADMINISTRATIVE CODE RETALIATION**

74. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

75. The New York City Administrative Code Title 8, § 8-107(1)(e) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter. . . "

76. Defendants violated the section cited herein as set forth.

**AS A EIGHTH CAUSE OF ACTION**
**UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**
**INTERFERENCE WITH PROTECTED RIGHTS**

77. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

78. New York City Administrative Code Title § 8-107(19) provides that: "It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section."

79. Defendants violated the section cited herein as set forth.

**AS A NINTH CAUSE OF ACTION**
**UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**
**SUPERVISOR LIABILITY**

80. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

81. New York City Administrative Code Title 8 § 8-107 (13)(b)(1)-(3) provides that "An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where: (1) the employee or agent exercised managerial or supervisory responsibility; or (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or (3) the employer should have known of the employee's or

agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct."

82. Defendants violated the section cited herein as set forth.

**AS A TENTH CAUSE OF ACTION**
**UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**
**AIDING & ABETTING**

83. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

84. New York City Administrative Code Title § 8-107 (6) provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so."

85. Defendants violated the section cited herein as set forth.

**AN ELEVENTH CAUSE OF ACTION**
**FOR ASSAULT & BATTERY**
**(Not Against Corporate Defendants)**

86. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of the Complaint as set forth at length herein.

87. Under New York law, assault is the (i) intentional placing (ii) of another person (iii) in reasonable apprehension (iv) of imminent harmful or offensive contact. *See United Nat. Ins. Co. v. Waterfront N.Y. Realty Corp., 994 F.2d 105, 108 (2d. Cir. 1993).*

88. Under New York law, as a result of the assault, a defendant commits battery when (i) there was bodily contact, (ii) the contact was offensive and (iii) the defendant intended to make the contact. *Id.*

89. Defendant SENIOR placed Plaintiff in reasonable apprehension of immediate harm and/or offensive contact when Defendant SENIOR attacked Plaintiff.

**AS A TWELVE CAUSE OF ACTION FOR**
**FOR GENDER MOTIVATED VIOLENCE**
**(Not Against Corporate Defendants)**

90. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of the Complaint as set forth at length herein.

91. N.Y. ADC. LAW § 8-903 states in relevant part "For purposes of this chapter: a. "Crime of violence" means an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law or that would constitute a misdemeanor or felony against property as defined in state or federal law if the conduct presents a serious risk of physical injury to another, whether or not those acts have actually resulted in criminal charges, prosecution, or conviction. b. "Crime of violence motivated by gender" means a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender.

92. N.Y. ADC. LAW § 8-904 : NY Code – Section 8-904: Civil Cause of Action states in relevant part "Except as otherwise provided by law, any person claiming to be injured by an individual who commits a crime of violence motivated by gender as defined in section 8-903 of this chapter, shall have a cause of action against such individual in any court of competent jurisdiction for any or all of the following relief: 1. compensatory and punitive damages; 2. injunctive and declaratory relief; 3. attorneys' fees and costs; 4. such other relief as a court may deem appropriate."

93. N.Y. ADC. LAW § 8-905 Limitations states in relevant part: "a. A civil action under this chapter must be commenced within seven years after the alleged crime of violence motivated by gender as defined in section 8-903 of this chapter occurred. . . . c. Nothing in this section requires a prior criminal complaint, prosecution or conviction to establish the elements of a cause of action under this chapter.

94. Defendant SENIOR's conduct constitutes crimes of "violence motivated by gender" under The Victims of Gender-Motivated Violence Protection Act ("VGMVPA").

95. Defendants SENIOR violated the section cited herein as set forth.

**WHEREFORE,** Plaintiff respectfully requests a judgment against the Defendants jointly and severally for all available damages including but not limited to emotional distress, lost wages, back pay, front pay, punitive damages, statutory damages, attorneys' fees, costs, medical expenses, interest and all other damages as are just and proper to remedy Defendants' unlawful employment practices.

**JURY DEMAND**

Plaintiff demands a trial by jury as to all issues so triable.

Dated: New York, New York
July 27, 2017

**DEREK SMITH LAW GROUP, PLLC**
*Attorneys for Plaintiff*

By: ______________________
Alexander G. Cabeceiras, Esq.
30 Broad Street, 35th Floor
New York, New York 10004